In re PRESIDENT AND FELLOWS OF HARVARD COLLEGE.

No. 4021.

Circuit Court of Appeals, First Circuit.

May 4, 1945.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

Walter A. Edwards and Edward T. Richards, both of Providence, R. I. (Edwards & Angell, of Providence, R. I., and Edward O. Proctor and Ropes, Gray, Best, Coolidge & Rugg, all of Boston, Mass., of counsel), for petitioner.

Francis D. McManus, Irving Winograd, and William E. McCabe, all of Providence, R. I., for City of Providence and Treasurer of City of Providence, intervenors.

MAGRUDER, Circuit Judge.

The case is before us upon an original petition by Harvard College for a writ of mandamus directed to the Honorable John P. Hartigan, United States District Judge for the District of Rhode Island, requiring him to vacate an order staying proceedings in a case pending before him and to hear and decide the same.

On January 28, 1942, Harvard College filed its complaint in the United States District Court for the District of Rhode Island against the City of Providence, its City Treasurer, and the Attorney General of Rhode Island. Jurisdiction was based upon diversity of citizenship, the President

and Fellows of Harvard College being a corporation incorporated under the laws of the Commonwealth of Massachusetts. The complaint set forth that Charles H. Smith, a resident of the City of Providence, died on September 4, 1900, leaving a will devising and bequeathing the residue of his estate to the City of Providence in perpetual trust to apply the net income therefrom: "in the purchase and planting of trees, plants, vines, shrubs, bulbs or seeds, native or foreign, in the discretion of said Superintendent, officer, officers, or Committee,—the same to be grown in Roger Williams Park in said City of Providence, or in the additions that may hereafter be made to said Park; or in the discretion of said Superintendent of Parks or other officer or officers or Committee so designated or appointed, in the construction, improvement and equipment of green-houses in said Park; provided, however, that the income from said trust estate shall be so applied in the construction of green-houses only upon the express condition that the green-houses which may from time to time be in said Park, shall, at reasonable hours, be open to the public every day in the week."

The will further provided that if the City of Providence "shall fail for any reason at any time to apply the income from said trust estate in the manner hereinbefore provided, the said estate so given to said City by this clause of my will shall thereupon be forfeited; and in that event I give, devise and bequeath said estate, real and personal, given to said City, by this clause of my will, unto Harvard College * * *" for certain described purposes. The complaint went on to allege, as follows: "The defendant, the City of Providence, has failed to apply the net income received by it from the residuary trust estate under said will in the manner provided in and by said will, and has applied the same, or a substantial part thereof, for purposes not authorized by said will. By reason thereof said defendant has forfeited said trust estate, and the same has under the provisions of said will vested in the plaintiff."

The prayer of the complaint was that the court take an account of the principal and income received by the City of Providence under the trust; that it declare that the city "has forfeited said trust estate and the same is now vested in the plaintiff"; that it determine the date of such forfeiture and direct the defendants to pay unto the plaintiff "an amount equivalent to the sum of all moneys constituting principal or income of said trust estate in their hands and possession on said date or received by them subsequently thereto, whether heretofore or hereafter, together with such interest thereon as may lawfully be due."

On September 21, 1942, the defendants, the City of Providence and the City Treasurer, filed their answer denying generally the doing of any acts constituting a forfeiture of the trust estate.

In answer to interrogatories propounded by the defendants, Harvard College set forth the following as the facts upon which it proposed to rely on the issue of forfeiture: (1) that the city had failed to expend all net income received from the trust estate; (2) that, of the money that was expended on the park, a far higher proportion was expended for labor than could have been done if such expenditures had been confined to purposes defined in the will; (3) that part of the income had been spent for the covering of bulbs, roses, and other plants during the winter, and also for the heating of green-houses, which expenditures were in large part for purposes not authorized by the will.

On May 7, 1943, over seven months after its answer had been filed in the federal court, the City of Providence filed in the Superior Court for the State of Rhode Island for the County of Providence a bill of complaint against Harvard College, with the Attorney General of the State joined as codefendant, alleging that "the net income from the trust estate has increased to such an extent that it has become impracticable or impossible to apply the entire net income as directed by the testator 'in the purchase and planting of trees, plants, vines, shrubs, bulbs or seeds, native or foreign, * * * or in the construction, improvement and equipment of green-houses in said Park * * *' if a strict and literal construction of the language of the testator is adopted, and there may remain a surplus of such net income, as to the application of which the testator has given no direction by said will and codicil." Wherefore, the city prayed the court to construe the will and to answer certain questions formulated in the bill. The questions thus propounded may be summarized as follows: (1) May the income be applied to the payment of labor costs and the purchase of materials and supplies necessary

and incidental to the purchase and planting of trees, plants, vines, shrubs, bulbs or seeds, native or foreign, in Roger Williams Park; (2) may the income be used for the payment of necessary costs for the care and maintenance of trees, plants, etc., in Roger Williams Park; (3) if the income is more than may be expended under a literal and strict construction of the will, may it be used for the general maintenance of Roger Williams Park; (4) may such excess income be used for the purchase and planting of trees, etc., and/or in the construction, improvement, and equipment of green-houses in city parks other than Roger Williams Park; (5) if any of the preceding questions is answered in the affirmative, and if there still exists excess income from the trust estate, may such excess income be expended for the payment of labor costs and the purchase of materials and supplies necessary and incidental to the purchase and planting of trees, etc., in city parks other than Roger Williams Park; (6) if there still remains surplus income, may the same be expended for the payment of necessary costs for the care and maintenance of trees, etc., in city parks other than Roger Williams Park; (7) may the city expend such excess income for materials, labor, and supplies in the general care and maintenance of city parks other than Roger Williams Park; and (8) if the answers to any or all of the above questions are in the negative, what applications shall be made of such excess income?

After the city filed the foregoing bill of complaint in the State Superior Court, Harvard College sought to remove that case to the United States District Court on the ground of diversity of citizenship. The Superior Court denied the petition for removal, whereupon Harvard College filed in the United States District Court a certified copy of the record in the case. But on July 17, 1944, Judge Hartigan ordered the case remanded to the Superior Court.

Meanwhile, on July 29, 1943, Harvard College had filed a plea in the Superior Court alleging that, because of the pendency of the complaint which it had brought in the United States District Court, the rights of the city in the trust estate were uncertain, and that, by reason of such uncertainty, the city was not entitled to a construction of the will or to instructions on the points requested; wherefore it prayed that the said suit in the Superior Court be dismissed. At the same time,

Harvard College filed in the Superior Court a motion praying that further proceedings in the said suit be stayed until the issue of forfeiture raised in the suit pending in the federal district court had been determined by that court. So far as appears in the record, the said plea and the said motion are still pending in the Superior Court.

On July 17, 1944, the federal district court, upon motion of the City of Providence, entered an order staying further proceedings under the pending complaint filed by Harvard College. This order read as follows: "That further proceedings in this cause, Civil Action No. 167, are herewith stayed until (1) in the cause now pending in the Superior Court of the State of Rhode Island for the Counties of Providence and Bristol entitled 'City of Providence v. The President and Fellows of Harvard College, and John H. Nolan, as Attorney General of the State of Rhode Island, Equity No. 17531', the Supreme Court of the State of Rhode Island shall have rendered an opinion answering one or more of the questions upon which instructions are asked in the bill of complaint in said cause or directing the dismissal of said cause, (2) there shall have been entered in said cause by said Superior Court a decree dismissing said cause and such decree shall have become final; provided, however, that the plaintiff herein may at any time apply for a vacation of this order by reason of the failure of the complainant in said cause now pending in said Superior Court to prosecute the same with due diligence or by reason of other good and sufficient cause arising hereafter."

This is the order which Harvard College seeks to have vacated in the present petition for writ of mandamus.

In a rescript accompanying the stay order, Judge Hartigan recited that the determination of the questions in the suit for instructions pending in the State Superior Court "has a relevant and material bearing on the vital issue of forfeiture presented in the instant case"; and that the "determination of said questions by the Rhode Island Supreme Court is controlling on this Court" under Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, and Huddleston v. Dwyer, 1944, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246. For this reason he deemed it appropriate to stay further pro-

ceedings until the will was construed by the Supreme Court of Rhode Island.[1]

We issued an order to show cause why a writ of mandamus should not issue, to which Judge Hartigan duly filed his return. The City of Providence and the City Treasurer filed their petition to be allowed to intervene in the mandamus proceedings, which intervention was allowed by order of a judge of this court. Thereafter the intervenors filed an answer to the petition for writ of mandamus. The case was submitted to us on oral argument and briefs by counsel for Harvard College and for the intervenors.

■ In the recent case of Meredith v. Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, the Supreme Court pointed out that, "In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment" (320 U.S. at page 234, 64 S.Ct. at page 11, 88 L.Ed. 9); that "Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine" (320 U.S. at page 236, 64 S.Ct. at page 12, 88 L.Ed. 9); and it explicitly stated that Erie R. Co. v. Tompkins "did not free the federal courts from the duty of deciding questions of state law in diversity cases" (320 U.S. at page 237, 64 S.Ct. at page 12, 88 L.Ed. 9). The court distinguished certain exceptional cases where exercise of the federal jurisdiction might not be appropriate; as where it might interfere with the state administrative function of prescribing the local rates of public utilities (Central Kentucky Gas Co. v. Railroad Commission, 1933, 290 U.S. 264, 54 S.Ct. 154, 78 L.Ed. 307); or where it might involve the appraisal or shaping of domestic policy of the state governing its administrative policies. Railroad Commission v. Rowan & Nichols Oil Co., 1941,

311 U.S. 570, 61 S.Ct. 343, 85 L.Ed. 358; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424. So, too, a federal court may properly stay proceedings before it to enable the parties to litigate first in the state courts questions of state law, decision of which is preliminary to, and may render unnecessary, decision of questions of constitutional law. Railroad Commission v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Spector Motor Service, Inc. v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152.

The case at bar certainly does not fall within any of the exceptional situations above referred to. The issues to be decided involve only the routine interpretation of particular language in a will to determine the intention of the testator as to the purposes for which trust income may be applied. No public policy or interest would be served by withholding from Harvard College "the benefit of the jurisdiction which Congress has created with the purpose that it should be availed of and exercised subject only to such limitations as traditionally justify courts in declining to exercise the jurisdiction which they possess." 320 U.S. at page 237, 64 S.Ct. at page 12, 88 L.Ed. 9. Harvard College was entitled to invoke the federal jurisdiction and have the district court interpret the will; the effect of the order staying proceedings is that the federal court has, in part at least, abdicated its jurisdiction and remitted the interpretation of the will to the state court in litigation commenced by the City of Providence over a year after Harvard College had invoked the federal jurisdiction.

■ It may well be that due deference to the ruling in Erie R. Co. v. Tompkins, as expanded and applied in subsequent decisions of the Supreme Court, would sometimes make it appropriate for a federal district court to stay proceedings based on diversity of citizenship. Thus, suppose A sues B in a federal district court for damages on account of invasion of an asserted right of privacy. Suppose, further, that a suit between C and D is then pending in the state supreme court upon appeal from a judgment of an intermediate state appel-

---

[1] C. 545, § 7, G.L. of R.I.1938, provides for certification to the Supreme Court of Rhode Island of a bill in equity for construction of a will or for instructions relative to a will when the bill is ready for final hearing.

late court in which it was held that such a cause of action could be maintained under state law. In this situation, unless the federal district court grants a stay, it would have to accept the state law as declared by the intermediate state appellate court (Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109), rule that the complaint stated a cause of action, and proceed with the trial on that basis. Yet, if the plaintiff A should obtain a verdict and judgment, and appeal therefrom were taken to the Circuit Court of Appeals, that court would be obliged to reverse the judgment if, while such appeal were pending, the supreme court of the state should hand down its decision in the suit of C against D and rule that, by the common law of the state, no right of privacy exists as a legally protected interest. Huddleston v. Dwyer, 1944, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246. With this possible outcome of the litigation in mind, it might well be proper for the federal district court, as an appropriate exercise of discretion, to stay the proceedings before it until the handing down by the state supreme court of the controlling ruling on the point of state law. Otherwise the parties would be subjected to the expense of what might prove to be a fruitless trial on issues of fact and an appeal from the ensuing judgment of the federal district court.

But the present case presents quite a different situation from the one just supposed. Here, the two pending suits—the one in the federal court and the other in the state court—are between the same parties. The respective issues presented are not in all respects identical, but there are several common points depending upon interpretation of the will which may well prove to be decisive of Harvard's claim that a forfeiture has occurred. If the federal district court had proceeded to hear and determine the issues presented in the case pending before it, its judgment, so far as concerns the issues common to the two cases, would be res judicata. Even though an appeal therefrom were taken to the Circuit Court of Appeals, the judgment of the district court, until vacated or reversed, would be binding on the parties in accordance with the principles of res judicata. Huron Holding Corporation v. Lincoln Mine Operating Co., 1941, 312 U.S. 183, 189, 61 S.Ct. 513, 85 L.Ed. 725; Deposit Bank v. Frankfort, 1903, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276; Ransom v. City of Pierre, 8 Cir., 1900, 101 F. 665; Chicago & A. R. Co. v. Green, C.C.C.D.Mo., 1902, 114 F. 676; Stewart v. Oneal, 6 Cir., 1916, 237 F. 897; Freeman on Judgments, 5th Ed., § 722. Hence there would be no prospect that the judgment of the federal district court might go for naught because of a later decision of the state court interpreting the will differently.

Therefore we think that the present case is in substance controlled by McClellan v. Carland, 1910, 217 U.S. 268, 280–282, 30 S.Ct. 501, 54 L.Ed. 762, and that, under the circumstances, the order staying proceedings was not an appropriate exercise of discretion. To the same effect see Great North Woods Club v. Raymond, 6 Cir., 1931, 54 F.2d 1017. The later decision in Erie R. Co. v. Tompkins, supra, has not weakened the authority of McClellan v. Carland, which was cited with approval in Meredith v. Winter Haven, supra (320 U.S. 228 at page 234, 64 S.Ct. 7, 88 L.Ed. 9).

It is clear, we think, that this court has power to issue a writ of mandamus, as prayed in the present petition. McClellan v. Carland, supra; Great North Woods Club v. Raymond, supra.

In accordance with the common practice, we shall refrain from issuing a writ of mandamus at this time, because we may assume that the District Judge will vacate his stay order and proceed to hear and determine the cause.

