EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALEJA ROMERO VDA. DE ORTIZ, acusada y apelante.

Núm. 14226.—*Sometido:* Enero 10, 1950. *Resuelto:* Marzo 21, 1950.

68

*F. Fernández Cuyar,* abogado de la apelante; *Hon. Procurador General Vicente Géigel Polanco* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En enero 17, 1950 confirmamos la sentencia de la corte de distrito imponiendo a la apelante seis meses de cárcel por una infracción de la sección 4, Ley núm. 220, Leyes de Puerto Rico, 1948 ((1) pág. 739), conocida como la Ley de la Bolita. La acusada ha apelado para ante la Corte de Apelaciones para el Primer Circuito y ha radicado una moción sobre fijación de fianza mientras se sustancia la apelación conforme a la Regla 46(a)(2) de las Reglas Federales de Enjuiciamiento Criminal. Esta Regla dispone que podrá señalarse fianza en apelación "solamente si aparece que el caso envuelve una cuestión sustancial que deba ser resuelta por la corte de apelaciones".

Según interpretamos su moción, la principal contención de la apelante es que la sección 4 es tan vaga e indefinida que viola la cláusula del debido procedimiento del Acta Orgánica. Esta alegación fué hecha por la apelante por

primera vez en su "Moción de Reconsideración y de Nulidad de Sentencia", radicada en este Tribunal en 26 de enero de 1950. En *Pueblo* v. *Mantilla*, ante, pág. 36, cuidadosamente consideramos y rechazamos esa contención. Pero bajo las circunstancias peculiares de este caso, el hecho de que la apelante levante una cuestión constitucional, no quiere decir necesariamente que hay una cuestión sustancial para ser resuelta en apelación.

Admitimos que el significado de la sección 4 representaba una cuestión sustancial *para este Tribunal*. Pero ésta es una cuestión local, que ha sido ahora resuelta. Por consiguiente, nuestros puntos de vista sobre esta cuestión no pueden ser alterados por la Corte de Apelaciones, a menos que sean inescapablemente erróneos. *De Castro* v. *Board of Comm'rs.*, 322 U. S. 451. Y para conceder fianza tendríamos que resolver afirmativamente que existe una cuestión sustancial en cuanto a que estamos inescapablemente errados sobre el significado de la sección 4, un estatuto local. Sin lugar a dudas, esta cuestión puede ser mejor contestada por la Corte de Apelaciones. Pero la Regla 46 (a) (2) requiere que nos confrontemos con ella, por lo menos en primera instancia. Al dar cumplimiento a este mandato, no estamos preparados para decir que existe tal cuestión sustancial.

█ Creemos que los casos en los cuales el Tribunal Supremo de los Estados Unidos ha pasado sobre la constitucionalidad de las leyes estatales nos son de ayuda aquí. En ellos la Corte Suprema ha tenido siempre gran cuidado al señalar que lo que una ley estatal significa no envuelve una cuestión constitucional. Es sólo después que el significado de la ley local ha sido definitivamente determinado por las cortes estatales, que surge la cuestión constitucional. En verdad, bajo circunstancias apropiadas la Corte Suprema ha rehusado considerar cuestiones constitucionales relacionadas con leyes estatales hasta que su significado ha sido fijado por las cortes estatales. *A. F. of L.* v. *Watson*, 327 U. S. 582, 595–99; *Federation of Labor* v. *McAdory*, 325 U. S. 450;

*Meredith* v. *Winter Haven*, 320 U. S. 228, 236; *Watson* v. *Buck*, 313 U. S. 387, 401–03; *Railroad Comm'n.* v.. *Pullman*, 312 U. S. 496; *In re President and Fellows of Harvard College*, 149 F.2d 69, 72 (C.C.A. 1, 1945). La Corte Suprema ha seguido la misma regla para leyes de los territorios. *Stainback* v. *Mo Hock Ke Lok Po*, 336 U. S. 368, 383–84. En igual forma, al considerar su constitucionalidad, el Tribunal Supremo acepta la interpretación de las cortes estatales de sus propios estatutos como concluyente. "La interpretación de la Corte de Apelaciones [estatal] injerta estas palabras en el estatuto tan definidamente como si éste hubiera sido enmendado por la Legislatura. *Hebert* v. *Louisiana*, 272 U. S. 312, 317; *Skiriotes* v. *Florida*, 313 U. S. 69, 79." *Winters* v. *New York*, 333 U. S. 507, 514; *Kovacs* v. *Cooper*, 336 U. S. 77, 84–85; *Terminiello* v. *Chicago*, 337 U. S. 1, 4; *Cole* v. *Arkansas*, 338 U. S. 345; *Fox* v. *Washington*, 236 U. S. 273.(¹)

■■ Quizá pueda argüirse que estos últimos casos que resuelven que la Corte Suprema acepta la interpretación estatal como concluyente, no son estrictamente aplicables, ya que las cortes superiores a ésta no vienen obligadas a aceptar nuestra interpretación de estatutos insulares. Pero nuestros puntos de vista en cuanto al significado de legislación local son decisivos, a menos que estén inescapablemente erróneos. Y la experiencia en años recientes nos ha demostrado que la posibilidad de que la Corte de Apelaciones rechace nuestra interpretación de una ley local es muy remota. Es precisamente debido a que los puntos de vista de las cortes territoriales son de ordinario considerados como

---

(¹) La Corte Suprema dijo en *Gryger* v. *Burke*, 334 U. S. 728, 731: "No estamos en libertad de hacer conjeturas en cuanto a que la corte sentenciadora actuó bajo una interpretación de la ley estatal diferente a aquélla que pudiéramos adoptar y luego establecer nuestra propia interpretación como base para declarar que se ha negado el debido procedimiento. No podemos tratar un mero error de ley estatal, de ocurrir alguno, como una negativa del debido procedimiento; de lo contrario, toda decisión errónea de una corte estatal sobre una ley local vendría ante nos como una cuestión constitucional federal."

decisivos, que la Corte Suprema, como hemos visto en el caso de *Stainback*, pospone las decisiones sobre la constitucionalidad de estatutos territoriales, así como estatales, hasta que las cortes territoriales decidan en cuanto a su significado. Por tanto somos de opinión que los casos en cuestión proporcionan una analogía en apoyo de nuestro criterio al efecto de que con toda probabilidad la Corte de Apelaciones aceptará nuestra interpretación de la sección 4 como concluyente, y luego procederá a determinar si la sección 4, así interpretada, viola la cláusula del debido procedimiento del Acta Orgánica.

Si estamos en lo correcto en nuestros puntos de vista expresados en el párrafo anterior y la Corte de Apelaciones encuentra que debe aceptar nuestra interpretación de la sección 4 porque no puede decir que es inescapablemente errónea, ninguna cuestión sustancial—es más, ninguna cuestión —en cuanto a constitucionalidad subsiste en el caso. Según dijimos en *Pueblo* v. *Mantilla*, supra, (pág. 49) ". . . una vez que hayamos concluído que la sección 4 requiere una demostración de que los objetos envueltos estaban conectados con un juego de bolita, el problema constitucional se desvanece. La acusada no alega que la ley así interpretada viola el debido procedimiento. Arguye solamente que no puede leerse en esta forma; que debe leerse tal como ella la interpreta; y que así interpretada es inconstitucionalmente vaga. Pero toda vez que diferimos de ella en cuanto al significado de la sección 4, la cuestión constitucional desaparece de este caso." Véase *Hebert* v. *Louisiana*, supra, pág. 317.

Nos damos cuenta del argumento un poco sutil que podría aducirse en apoyo de la teoría de que la determinación del significado de la sección 4 no es una cuestión local. En verdad, en *Pueblo* v. *Mantilla*, supra, se adujo este mismo argumento. En síntesis, esta contención es que la sección 4 es tan clara y libre de toda ambigüedad que no deja margen a interpretación y el que nosotros la interpretemos como lo

hemos hecho constituye "legislación judicial" y una violación de la doctrina de separación de poderes.

Creemos que este argumento va demasiado lejos. De ser válido, se aplicaría virtualmente a todo caso mediante el cual interpretamos legislación local y destruiría la doctrina de "inescapablemente erróneo". Bajo esta doctrina compete primordialmente a esta Corte determinar el significado de estatutos insulares. Pero esa regla nada significaría si un apelante pudiera persuadir a la Corte de Apelaciones de que ejerciera su criterio independiente al interpretar tales Leyes meramente alegando que hemos invadido las prerrogativas de la Legislatura. En análisis final, en todo caso en que una parte no esté de acuerdo con nosotros en cuanto al significado de legislación local, cree que estamos legislando. Véase *Compañía Popular* v. *Unión de Empleados*, 69 D.P.R. 179, 190, nota 2. ¿Tiene con ello derecho al criterio independiente de la Corte de Apelaciones sobre su contención? No creemos que ésta fuera la regla que la Corte Suprema tuvo en mente establecer en el caso de *De Castro* v. *Board of Comm'rs.*, supra. Más bien creemos que quiso la Corte conceder a este Tribunal mano libre para determinar el significado de leyes locales, siempre y cuando que nuestra decisión no fuera inescapablemente errónea. Y como ya se ha indicado la experiencia nos ha demostrado que las cortes superiores a ésta raramente concluyen que una decisión nuestra sobre alguna cuestión local sea inescapablemente errónea.

Otra forma de exponer este punto es que los argumentos de que hemos infringido la doctrina de la separación de poderes y que nuestra conclusión en cuanto al significado de la sección 4 es inescapablemente errónea, tienden a confundirse entre sí. Es decir, si nuestra interpretación de la sección 4 es enteramente arbitraria y caprichosa, entonces no solamente es inescapablemente errónea sino que hemos también frustrado la intención de la Legislatura y con ello violado la doctrina de la separación de poderes. En igual forma, si la Corte de Apelaciones llega a la conclusión de que nuestra

interpretación de la sección 4 no es inescapablemente errónea, la doctrina de la separación de poderes nunca entra en juego: el significado de la sección 4 es fijado por el lenguaje del estatuto según nosotros lo interpretamos. Por consiguiente, no podemos ver cómo la doctrina de la separación de poderes tiene algún efecto sobre el problema de si existe una cuestión sustancial en cuanto a si la Corte de Apelaciones revocará nuestra interpretación de la sección 4. Cf. *Buscaglia* v. *District Court of San Juan*, 145 F.2d 274, 283–84 (C.C.A. 1st, 1944), *certiorari* denegado, 323 U. S. 793.

██ Creemos conveniente indicar también que la Regla 46(a)(2) no dice que la concesión de fianza sea mandatoria. Sólo dispone que "podrá" concederse fianza si existe una cuestión sustancial a determinarse en apelación. Creemos que la Regla nos otorga discreción para denegar la fianza porque el acusado sea un sujeto peligroso. Y aquí, si bien la acusada quizá no sea un sujeto peligroso en el sentido físico, es una amenaza a la comunidad con motivo de sus actividades ilícitas. Véase *Pueblo* v. *Mantilla*, supra. No estamos preparados para decir que ella no continuará estas actividades si se le deja en libertad mediante fianza. Además, nuestros archivos demuestran un número de casos pendientes que pudieran exigir el mismo trato si confirmáramos las sentencias de convicción en ellos dictadas. Según indicamos en el caso de *Mantilla*, por fin se están dando pasos efectivos a tenor con la Ley núm. 220 con miras a erradicar los graves males que han surgido a causa de la bolita en Puerto Rico. El cumplimiento de las sentencias ya se ha demorado considerablemente mientras éste y otros casos han navegado por los canales de las cortes. Si ahora concediésemos las fianzas en tales casos, se menoscabaría seriamente la ejecución efectiva de la Ley núm. 220 mientras los casos estén pendientes ante la Corte de Apelaciones. Creemos bajo las circunstancias que cualquier discreción que podamos tener en este asunto, debe ejercitarse en contra de la acusada.

■ Sabemos que bajo la Regla 46 (a) (2) la Corte de Apelaciones o cualquiera de sus jueces pueden conceder fianza en este caso independientemente de nuestra actuación sobre esta moción. Pero eso no nos releva de la obligación de resolver la moción en primera instancia. Y al así hacerlo, creemos que la Corte de Apelaciones tiene derecho a conocer nuestro criterio en detalle, particularmente cuando "las consideraciones relevantes a una decisión deben entresacarse de un ambiente poco familiar y muy distante a aquél en que funciona la corte que revisa." *De Castro* v. *Board of Comm'rs.*, supra, pág. 457. Toda vez que somos de opinión que la acusada no cae dentro de la Regla 46 (a) (2), es nuestro deber denegar la fianza. Véanse Yankwich, *Release on Bond by Trial and Appellate Courts*, 7 F.R.D. 271, 276 *et seq.;* Holtzoff, *Defects in the Administration of Criminal Justice*, 9 F.R.D. 303, 305.

*La moción para que se señale fianza en apelación será declarada sin lugar.*

El Juez Asociado Sr. Negrón Fernández no intervino.

Opinión disidente del Juez Asociado Sr. Todd, Jr.

Habiendo disentido en el caso de *Pueblo* v. *Mantilla*, ante, pág. 36, forzosamente tengo que disentir en cuanto a la decisión en el presente, relacionada con la fijación de fianza en apelación.

Considero que hay una cuestión sustancial envuelta en el recurso de apelación en este caso y que no compete a esta Corte, *a priori*, decir que dicha cuestión no existe por no estar inescapablemente errados en nuestras decisiones. Me parece presuntuosa esa actitud. Si ella ha de prevalecer, entonces en ningún caso resuelto por esta Corte procede que se fije, por nosotros, fianza en apelación por la sencilla razón de que nunca habremos de considerar que nuestra decisión es inescapablemente errónea.

Pero no es ése el enfoque que debe dársele a la cuestión. Al fijar fianza no "tendríamos que resolver afirmativamente

que existe una cuestión sustancial en cuanto a que estamos inescapablemente errados. . ." Nuestra decisión *puede ser* declarada inescapablemente errónea pero ese hecho compete a la Corte de Apelaciones determinarlo y no a nosotros. Me parece presuntuoso afirmar, nosotros mismos, que nuestra decisión en el presente caso no es inescapablemente errónea, que la posibilidad de que la Corte de Apelaciones rechace nuestra interpretación de la ley "es muy remota" y que "con toda probabilidad" dicha Corte "aceptará nuestra interpretación de la sección 4 como concluyente."

Aun cuando la Corte ha rechazado el argumento expuesto por el apelante en el caso de *Pueblo* v. *Mantilla*, supra (aceptado como correcto por mí en la opinión disidente) al efecto de que la interpretación que se le ha dado a la sección 4 de la Ley de Bolita es un flagrante ejemplo de legislación judicial, no autorizada, no puede sostenerse lógicamente que ese argumento "De ser válido, se aplicaría virtualmente a todo caso mediante el cual interpretamos legislación local y destruiría la doctrina de 'inescapablemente erróneo'." Ese argumento sí que va demasiado lejos. Si lo entiendo, significa que siempre que interpretamos un estatuto local podemos variar sus términos expresos, incluir frases que han sido omitidas por el legislador, cambiar una palabra por otra, en fin, variar el estatuto como nos plazca y, en ninguno de esos casos podría existir cuestión sustancial en apelación porque como esta Corte por sí misma afirmaría que no está "inescapablemente errada" en su manera de interpretar el estatuto, pues no procede la fijación de fianza en ningún caso. Si éste no es el resultado de esa afirmación ¿en qué caso sobre interpretación de un estatuto local podría proceder la fijación de fianza?

A mi juicio el presente caso envuelve una cuestión sustancial que debe ser resuelta por la Corte de Apelaciones y que bajo la Regla 46 (a) (2) de las Reglas Federales de Enjuiciamiento Criminal procede la fijación de fianza en apelación.