<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 99-1960

                   PEDRO OSCAR CRUZ, ET AL.,

                    Plaintiffs, Appellants,

                               v.

                 JUAN R. MELECIO, ETC., ET AL.,

                    Defendants, Appellees.  

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                             Before

                   Selya, Boudin and Lynch,
                                
                       Circuit Judges.
                                
                                
                                
    Roberto A. Fernandez for appellants.
    Pedro A. Delgado, with whom O'Neill & Borges was on brief, for
defendants-appellees.
    Gustavo A. Gelp, Solicitor General, Puerto Rico Dep't of
Justice, for intervenor-appellee.

February 17, 2000

                                

 SELYA, Circuit Judge.  The appellants in this case
challenge the constitutionality of certain provisions of Puerto
Rico law regulating ballot access on the part of political parties.  
Their appeal asks us to set aside an order of the district court
dismissing their complaint and to grant declaratory and injunctive
relief.  Resolving this dilemma requires us to confront complex and
highly nuanced questions of comity, federalism, and the proper use
of federal judicial power.  After studying the problems presented,
we reverse the order of dismissal and remand to the district court
with directions to stay further proceedings pending the resolution
of a related case awaiting decision before the Puerto Rico Supreme
Court.
I.  BACKGROUND
 The appellants are citizens of Puerto Rico and members of
the Partido Accin Civil (the Party).  They seek to register the
Party on a commonwealth-wide basis, so that its candidates will
appear on the ballot for the November 2000 general election.  To do
so, they must file petitions with the Puerto Rico Election
Commission (the Commission) before June 1, 2000, which have been
signed by registered voters aggregating no less than five percent
of the total votes cast for gubernatorial candidates in the
preceding general election.  See P.R. Laws Ann. tit. 16,  3101(3).  
Each petition must be notarized and filed within seven days.  See
id.  3101(3), 3102.  Based on participation in the 1996
gubernatorial election, the Party must garner approximately 100,000
signatures.
 Apparently viewing this hurdle as insurmountable (or
nearly so), the appellants filed this action for declaratory and
injunctive relief in Puerto Rico's federal district court.  They
named the members of the Commission as defendants and asserted that
the notarization requirement and seven-day deadline, separately and
in combination, transgress the First and Fourteenth Amendments to
the United States Constitution by abridging the appellants' rights
to free speech and association, to participate meaningfully in the
political process, to vote, and to enjoy equal protection of the
laws.  In support of these asseverations, the appellants allege
that the process is prohibitively expensive because only attorneys
can act as notaries in Puerto Rico; that, in any event, too few are
willing to take the time to validate petitions; that the seven-day
requirement is burdensome in light of the tight time parameters and
the "monumental" paperwork that must be included when a petition is
submitted to the Commission; that petitions to register a local
party need not be notarized; that petitions for aspirants in party
primaries may be filed ten days after being sworn (rather than
seven); and that there is no comparable deadline for petitions to
place independent candidates on the ballot.
 The appellants filed their federal complaint on March 23,
1999, and simultaneously moved for a preliminary injunction.  
Defendant-appellee Juan R. Melecio, the Commission chairman, cross-
moved for dismissal.  The Puerto Rico Attorney General intervened,
see 28 U.S.C.  2403(b), and joined Melecio's motion to dismiss.  
The motion theorized that the appellants' action was barred by res
judicata and that, in all events, the challenged requirements serve
compelling state interests without unduly burdening voters'
constitutional rights.
 The reference to res judicata relates to an action filed
by the Party in a commonwealth court on October 6, 1998.  In that
suit, brought against the Commissioners and others, the Party
challenged the same ballot-access requirements under both the
United States and Puerto Rico constitutions.  The Puerto Rico Court
of First Instance granted summary judgment in favor of the
defendants on January 21, 1999.  Just two days after the
commencement of the federal court action, the Puerto Rico Circuit
Court of Appeals affirmed the judgment.  See Partido Accin Civil
v. Commonwealth, No. KLAN9900158, slip op. (P.R. App. Mar. 25,
1999).  The Party took a further appeal to the Puerto Rico Supreme
Court.  On July 30, that court dismissed the appeal, see P.R. Laws
Ann. tit. 4,  22i(b) (providing for direct appeal from a judgment
of unconstitutionality, but not from a judgment of
constitutionality), instead granting certiorari.  The case (No. AC-
1999-20) has been briefed and is awaiting decision.
 The district court elected neither to delve into the
intricacies of the res judicata defense nor to address the
appellants' prayer for preliminary injunctive relief.  Instead, it
went straight to the heart of the case and dismissed the action on
the merits.  See Cruz v. Melecio, Civ. No. 99-1296 (PG), slip op.
(D.P.R. July 7, 1999) (granting defendants' and intervenor's motion
to dismiss under Fed. R. Civ. P. 12(b)(6)).  The district court
ruled while the improvident commonwealth appeal was pending and a
few days before the Puerto Rico Supreme Court granted certiorari.  
This appeal ensued.
II.  RES JUDICATA
 If successful, the res judicata defense ends our inquiry.  
Thus, we begin by addressing the efficacy of that defense.
 By federal statute, "judicial proceedings of any court of
any . . . State, Territory or Possession . . . shall have the same
full faith and credit in every court within the United States . .
. as they have by law or usage in the courts of such State,
Territory or Possession."  28 U.S.C.  1738.  This mandate
"requires federal courts to give the same preclusive effect to
state court judgments that those judgments would be given in the
courts of the State from which the judgments emerged."  Kremer v.
Chemical Constr. Corp., 456 U.S. 461, 466 (1982).  The fact that a
suit raises a federal question or seeks to vindicate federal
constitutional rights does not blunt the force of this command.  
See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-
85 (1984); Allen v. McCurry, 449 U.S. 90, 96-105 (1980).  
Consequently, state law, with all its wrinkles, applies in deciding
the res judicata effect of a state court judgment in a federal
court.  See Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 974
(1st Cir. 1989).  We therefore look to the law of Puerto Rico to
deduce the preclusive effect of the judgment entered by the Court
of First Instance.
 The Civil Code limns the operation of the doctrine of res
judicata in Puerto Rico:
     In order that the presumption of the
 res adjudicata may be valid in another suit,
 it is necessary that, between the case decided
 by the sentence and that in which the same is
 invoked, there be the most perfect identity
 between the things, causes, and persons of the
 litigants, and their capacity as such.

P.R. Laws Ann. tit. 31,  3343.  Although the present appellants
are not named parties in the commonwealth court proceedings, they
are members of the organization that is the plaintiff there and
they control that litigation.  This type of privity suffices for
res judicata purposes.  See Montalvo-Huertas, 885 F.2d at 975
(applying Puerto Rico law); see also Restatement (Second) of
Judgments  39 (1982).  After all, courts typically have refrained
from interpreting the phrase "perfect identity" literally, see
Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 43-45 (1st Cir.
1985), and the appellants do not suggest that nominal differences
between two actions will suffice to undermine the preclusive effect
of a commonwealth court ruling.
 Going beyond "identity" questions, due process imposes an
added requirement:  for res judicata to operate, the precluded
party must have had a full and fair opportunity to litigate her
case in the earlier proceeding.  See Allen, 449 U.S. at 95;
Massachusetts Sch. of Law at Andover v. American Bar Ass'n, 142
F.3d 26, 39 (1st Cir. 1998); Medina v. Chase Manhattan Bank, 737
F.2d 140, 145 (1st Cir. 1984).  The appellants seize upon this
imperative and vigorously assert that they were denied a full and
fair opportunity to litigate their federal claims in the
commonwealth proceedings.
 Stripped of rhetorical flourishes, this assertion reduces
to the notion that, by deciding the case on summary judgment and
without hearing oral argument, the commonwealth trial court
deprived the Party of an opportunity to litigate its claims.  This
is sheer persiflage.  There is nothing fundamentally unfair about
the summary judgment process, nor does the absence of an
opportunity to supplement written submissions with oral advocacy
constitute a denial of due process.  See United States v. One 1974
Porsche 911-S, 682 F.2d 283, 286 (1st Cir. 1982) ("There is no
constitutional right to oral argument on a summary judgment
motion.").
 The appellants' next argument   that the commonwealth
trial court failed to acknowledge the constitutional principles
underlying their claims   leads nowhere.  Although the commonwealth
trial court did not explicitly mention the federal constitutional
rights of Party members, it relied throughout its opinion on United
States Supreme Court case law evaluating the constitutionality of
registration requirements for new political parties.  We have
deemed even more cryptic references sufficient in other settings to
show that a state court considered a federal constitutional
argument, see, e.g., Nadworny v. Fair, 872 F.2d 1093, 1101-03 (1st
Cir. 1989), and we see no reason to apply a different rule in this
context.  At any rate, it takes more than imprecise opinion writing
to ground a violation of due process in a situation of this sort;
substantive error, even of a constitutional magnitude, will not
deprive a procedurally adequate judicial proceeding of res judicata
effect.  See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394,
398-99 (1981); Bolker v. Superior Court, 82 P.R.R. 785, 799-800
(1961); cf. Jeter v. Hewitt, 63 U.S. (22 How.) 352, 364 (1859)
(observing that "res judicata renders white that which is black,
and straight that which is crooked").  A contrary rule would make
it impossible to resolve constitutional claims with any degree of
finality.
 Having overcome these process-oriented objections, we
turn next to the critical question:  would the Puerto Rico courts
ascribe preclusive effect to the existing judgment in the
commonwealth case?  We think not.
 Under Puerto Rico law, claim preclusion requires a prior
judgment on the merits that is, in the authoritative Spanish,
"final y firme" (officially translated as "final and
unappealable").  See Worldwide Food Distribs., Inc. v. Coln
Bermdez, 133 P.R. Dec. 827, 831 (1993) (official trans. at 4).  
This phrase makes manifest that a commonwealth court judgment
cannot be accorded preclusive effect until all available appeals
have been exhausted (or the time for taking them has expired).  See
Vega Arriaga v. J.C. Penney, Inc., 658 F. Supp. 117, 120-21 (D.P.R.
1987).

 Even though the Puerto Rico Supreme Court has not made
this point in so many words, we believe that this is the clear
implication of the court's repeated emphasis on the phrase "final
y firme" in its discussions of res judicata.  E.g., Worldwide Food,
133 P.R. Dec. at 831 (official trans. at 4); Rodrguez Rodrguez v.
Colberg Comas, 131 P.R. Dec. 212, 222 (1992) (official trans. at
8); A & P Gen. Contractors, Inc. v. Asociacin Can, Inc., 10 P.R.
Offic. Trans. 987, 988 (1981); De Jess Borrero v. Guerra Guerra,
105 P.R.R. 282, 285, 286 (1976) (per curiam); Commonwealth v.
Sociedad Civil Agricola, 104 P.R.R. 548, 554 (1975) (per curiam);
Gonzlez Saldaa v. Superior Court, 96 P.R.R. 119, 122, 123 (1968).  
This emphasis is telling.  As the Puerto Rico Supreme Court has
written, "[r]es judicata is understood to mean that which has been
settled by the final judgment of a judge or competent court and
bears with it the firmness of its irreversibility."  Worldwide
Food, 133 P.R. Dec. at 834 (official trans. at 6) (quoting 8-2 Jose
Maria Manresa, Comentarios al Cdigo Civil Espaol 278 (1967)).  
And while the Spanish word "firme" encompasses several distinct
legal concepts, see Henry Saint Dahl, Dahl's Law Dictionary 215 (3d
ed. 1999), there is no doubt that when the Puerto Rico Supreme
Court uses the term to describe a judgment, the court intends to
denote unappealability.  See Ex parte Bolvar, 12 P.R.R. 261, 264-
65 (1907) (explaining that "[t]he meaning of a sentencia firme and
a sentencia final are entirely different in legal language, because
an appeal does not lie from a sentencia firme, while an appeal does
lie in the cases provided by the law from a sentencia final"); see
also Bolker, 82 P.R.R. at 792 (translating "firme" in this context
as "final and unappealable").  In other words, a judgment becomes
"final y firme" when no further appeal from it can be taken.  See
In re Pagn Coln, 100 P.R.R. 220, 224 (1971); Gonzlez Saldaa, 96
P.R.R. at 122.
 Of course, the view that a judgment does not carry
preclusive effect until all available appeals have been exhausted
(or the time for taking them has expired) represents a departure
from the juridical norm.  See 18 James Wm. Moore et al., Moore's
Federal Practice  131.30[2][c][ii], at 131-97 to -98 (3d ed. 1999)
(describing rule that a federal court judgment must be given res
judicata effect as soon as it is issued, notwithstanding the
possibility   or even the pendency   of an appeal); see also
Restatement (Second) of Judgments  13 cmt. f, 16 (1982).  Be that
as it may, Puerto Rico is not the only jurisdiction to adhere to
the minority view.  See E.H. Schopler, Annotation, Judgment as Res
Judicata Pending Appeal or Motion for a New Trial, or During the
Time Allowed Therefor, 9 A.L.R.2d 984 (1950 & Supp. 1997)
(surveying cases from various jurisdictions).  In interpreting the
jurisprudence of a state, "our task is to ascertain the rule the
state court would most likely follow under the circumstances, even
if our independent judgment on the question might differ."  
Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir.
1996).  In this instance, a preclusion principle that does not
operate in the absence of a final, unappealable judgment lies well
within the ambit of Puerto Rico's judicial power and thus merits
federal recognition.
 The status of the proceedings in the commonwealth courts
thus answers the res judicata question that has been raised in this
case.  Federal courts can ascribe no greater preclusive force to a
state court judgment than would the courts of that state.  See
Johnson v. De Grandy, 512 U.S. 997, 1005 (1994); Board of Pub.
Works v. Columbia College, 84 U.S. (17 Wall.) 521, 529 (1873).  
Because claim preclusion under Puerto Rico law depends on the
existence of an unappealable final judgment and the commonwealth
court's judgment in this case was on appeal at the time the federal
district court ruled, principles of res judicata do not foreclose
the appellants' federal court action.

III.  THE DISMISSAL ORDER
 This brings us to the crux of the matter.  The district
court dismissed the complaint for failure to state a claim upon
which relief could be granted.  See Fed. R. Civ. P. 12(b)(6).  We
afford plenary review to this ruling.  See Roth v. United States,
952 F.2d 611, 613 (1st Cir. 1991).  In doing so, we remain mindful
of our duty to reverse an order of dismissal under Rule 12(b)(6) if
the well-pleaded facts, taken as true, justify recovery on any
supportable legal theory.  See Conley v. Gibson, 355 U.S. 41, 45-46
(1957); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).
 The jurisprudence of Rule 12(b)(6) requires us to
consider not only the complaint, but also matters fairly
incorporated within it and matters susceptible to judicial notice.  
See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st
Cir. 1998); Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-
18 (5th Cir. 1996).  From this amalgam, we extract the well-pleaded
facts and draw all reasonable inferences favorable to the
complainant.  See Papasan v. Allain, 478 U.S. 265, 283 (1986);
Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.
1990).  Under this forgiving standard, we cannot affirm the
dismissal order.
 Individuals have constitutionally protected interests in
free association and electoral participation, including the
formation of new political parties.  See Anderson v. Celebrezze,
460 U.S. 780, 793-94 (1983); Williams v. Rhodes, 393 U.S. 23, 30-31
(1968).  Thus, courts must view severe restrictions on party ballot
access skeptically, affording exacting scrutiny to such
restrictions.  See Norman v. Reed, 502 U.S. 279, 288-89 (1992).  
Here, the complaint alleges facts which, if true, tend to support
the appellants' claims that the notarization requirement and seven-
day deadline unduly burden ballot access.  If, for example, the
appellants can prove that notarization is prohibitively expensive
or otherwise difficult to achieve (as the complaint avers), then
the Commission will have to show that the notarization requirement
is narrowly drawn to advance a compelling governmental interest.  
See id.  This showing requires the Commission to come forward with
proof.  Whether it ultimately can succeed in this endeavor is a
sufficiently open question that we cannot conclude, on the
pleadings, that no set of facts exists under which the appellants
might prevail.
 That clinches the matter.  The fact-specific nature of
the relevant inquiry, see, e.g., Anderson, 460 U.S. at 789-90
(warning that this type of inquiry is never "automatic"), obviates
a resolution of this case on the basis of the complaint alone.  
Consequently, the district court acted too hastily in dismissing
the action for failure to state a potentially viable claim.
IV.  FURTHER PROCEEDINGS
 Having found dismissal unwarranted, we normally would
remand the case for vacation of the district court's order and
further proceedings in the ordinary course.  Here, however,
considerations of federalism, comity, and sound judicial
administration prompt us to travel a path less frequently taken.
 The distinguishing circumstance in this case is that the
appellants filed suit in federal court while simultaneously
pursuing (through the Party) an appeal from a disposition of the
same claims in the commonwealth courts.  This twist creates an
unusual, but not unprecedented, procedural posture.  In Glen Oaks
Utils., Inc. v. City of Houston, 280 F.2d 330 (5th Cir. 1960), a
group of plaintiffs filed suit in federal district court while
simultaneously appealing an unfavorable state court judgment on
essentially the same claims.  See id. at 331-32.  There, as here,
the duplication included parallel requests for injunctive relief
based on an alleged abridgement of federal constitutional rights.  
See id. at 333-34.  And at that time, Texas, like Puerto Rico, did
not accord res judicata effect to a judgment which was on appeal.  
See id. at 334.  The Fifth Circuit nonetheless affirmed an order
staying federal court proceedings pending final resolution of the
state court proceedings.  See id.  The court explained (in words
that apply with equal force to the instant case):
   Here the jurisdiction of the state court was
 already invoked and the [plaintiffs] had
 sought to bring about that unseemly conflict
 between two sovereignties which the doctrines
 of comity and abstention are designed to
 avoid.

Id.; cf. In re President of Harvard College, 149 F.2d 69, 72-73
(1st Cir. 1945) (holding stay improper absent a state court
judgment, but suggesting that an opposite result would inhere if a
state court judgment had been rendered and was pending on appeal in
the state system).
 Since Glen Oaks, abstention and related doctrines have
proliferated.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706,
716-17 (1996) (listing varieties of abstention).  Nonetheless, the
bedrock is unshaken:  familiar principles of federalism and comity
undergird virtually all of abstention's many doctrinal
permutations.  See, e.g., Younger v. Harris, 401 U.S. 37, 44 (1971)
(grounding one branch of abstention doctrine in comity and
federalism); Louisiana Power & Light Co. v. City of Thibodaux, 360
U.S. 25, 28 (1959) (stating that abstention cases "reflect a deeper
policy derived from our federalism"); Railroad Comm'n v. Pullman
Co., 312 U.S. 496, 501 (1941) (justifying abstention as a means to
"further[] the harmonious relation between state and federal
authority").  Moreover, the various strains of abstention-related
doctrines are not Procrustean taxonomies, but, rather, concepts
that reflect "a complex of considerations designed to soften the
tensions inherent in a system that contemplates parallel judicial
processes."  Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 n.9
(1987); see also DeMauro v. DeMauro, 115 F.3d 94, 99 (1st Cir.
1997).  Thus, considerations of "wise judicial administration"
alone may sometimes warrant dismissal of a federal court
proceeding.  Colorado River Water Conserv. Dist. v. United States,
424 U.S. 800, 818 (1976).
 To be sure, this case arguably does not fit into any of
the established doctrinal boxes; and, at best, abstention remains
"an extraordinary and narrow exception to the duty of a District
Court to adjudicate a controversy properly before it," County of
Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959).  
Nevertheless, several factors coalesce to convince us that a stay
is appropriate until the proceedings presently pending before the
Puerto Rico Supreme Court have run their course.
 First, federal courts should exercise their equitable
powers with discretion.  See El Dia, Inc. v. Hernandez Colon, 963
F.2d 488, 497-98 (1st Cir. 1992).  An important hallmark of equity
is the ability to assess the totality of the circumstances and
custom-tailor appropriate relief.  It follows that "[s]imply
because an equitable remedy may be available does not necessarily
mean that it must automatically issue."  Id. at 497 (citing, inter
alia, Tennessee Valley Auth. v. Hill, 437 U.S. 153, 193 (1978)).  
We think that the circumstances here counsel in favor of restraint.
 Second, the appellants waited to file suit in federal
court until after the Puerto Rico Court of First Instance had
entered a final judgment adverse to their interests.  Their timing
raises the discomfiting specter of forum-shopping   and we are free
to factor this circumstance into the decisional calculus.  See
Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991) (stating that the
order in which jurisdiction attaches not only can be considered,
but also "must be examined in light of the motivation of the
plaintiff in filing the second suit").  Indeed, in most
jurisdictions, res judicata would bar the appellants from going to
judgment in the state court and then searching out a federal forum
as a means of bobbing once more for the apple.  Although we may
ascribe no greater preclusive effect to the earlier judgment than
would the Puerto Rico courts, we need not turn a blind eye to those
proceedings.  See Bailey v. Ness, 733 F.2d 279, 282 (3d Cir. 1984);
see also Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 272-73
(1st Cir. 1996) (holding abstention appropriate even though claims
were not barred by res judicata).  As a practical matter, the
appellants filed the present suit in an effort to detour around an
unfavorable judgment of the commonwealth trial court, and this
attempted end run is highly relevant to the calculus of abstention.  
See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d
529, 533-34 (1st Cir. 1991) (affirming abstention based in part on
federal plaintiff's motivation); see also Lundborg, 91 F.3d at 273
(upholding order of dismissal when suit was "effectively an attempt
to undo a preexisting, final judgment of a state court").
 Third, the commonwealth proceedings were not only filed
first, but have now progressed much further.  This, too, affects
the desirability of abstention.  See Moses H. Cone Mem. Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 21-22 (1983).  The Party
initially selected the commonwealth courts and aggressively pursued
its members' interests in that venue.  If the federal courts now
choose to defer, the appellants have no one to blame but
themselves.
 Fourth, the case before the Puerto Rico Supreme Court is
more comprehensive than the newer federal case because it covers
both commonwealth and federal constitutional claims.  Plainly, the
interests of judicial efficiency and eliminating piecemeal
litigation favor resolving these closely related claims in a single
forum.  See Bath Mem. Hosp. v. Maine Health Care Fin. Comm'n, 853
F.2d 1007, 1012-13 (1st Cir. 1988).  There is also a real
possibility that the Puerto Rico Supreme Court may decide the case
before it on state-law grounds in a way that avoids altogether the
necessity for federal constitutional adjudication.  The
attractiveness of abstention increases in direct proportion to the
strength that one attaches to this possibility.  See Pullman, 312
U.S. at 501; Romany v. Colegio de Abogados, 742 F.2d 32, 40 (1st
Cir. 1984); see also Aggarwal v. Ponce Sch. of Med., 745 F.2d 723,
726 (1st Cir. 1984) ("It has long been a basic tenet of the federal
courts to eschew the decision of cases on constitutional grounds
unless and until all other available avenues of resolution were
exhausted.").
 Last, and perhaps most important, the Puerto Rico Supreme
Court stands poised to enter a judgment on the merits that in all
probability will carry full preclusive effect under Puerto Rico
law.  From the standpoint of federalism and comity, there is
something particularly offensive about hijacking a case that is
pending on the docket of a state's highest tribunal.  See American
Benefit Life Ins. Co. v. United Founders Life Ins. Co., 515 F.
Supp. 800, 803 (W.D. Okla. 1980) ("Considerations of comity and
principles of sound judicial administration require abstention when
a state court decision is on appeal to that state's supreme court
and a second action is filed in federal court.").  Because we have
no reason to doubt that the "parallel state-court litigation will
be an adequate vehicle for the complete and prompt resolution of
the issues between the parties," Moses H. Cone, 460 U.S. at 28,
abstention presents a very palatable option.
 We recognize, of course, that the presence of a federal
issue "must always be a major consideration weighing against
surrender [of federal jurisdiction]."  Id. at 26; accord Gonzales,
926 F.2d at 5.  The time-sensitive nature of the appellants' claims
exerts additional pressure on this side of the balance.  
Nevertheless, given the unusual posture of the case and the
combined force of the factors we have enumerated, these
considerations are substantially outweighed by compelling interests
of fairness, comity, and sound judicial administration.  See Glen
Oaks, 280 F.2d at 333-34 (affirming stay of proceedings pending
resolution of state supreme court appeal notwithstanding the fact
that the plaintiffs' complaint raised federal constitutional
issues); Ray v. Hasley, 214 F.2d 366 (5th Cir. 1954) (similar).  As
we previously wrote in an analogous setting, "when a state court
has matters well in hand, withholding federal [equitable] relief
premised on constitutional grounds will maintain and facilitate
federalism; foster state-created accommodations of constitutional
principles and state interests; and husband federal judicial
resources."  El Dia, 963 F.2d at 497.
 We need go no further.  For the foregoing reasons, the
order dismissing the appellants' action is reversed and the matter
is remanded to the district court with instructions to vacate that
order and stay proceedings pending the Puerto Rico Supreme Court's
decision in the parallel commonwealth court litigation.  The
district court is, of course, at liberty to vacate the stay or to
make other or further orders in the event of changed circumstances.

 So Ordered.

</body>

</html>