**CITY OF CHICOPEE and Town of Ayer, Plaintiffs,**

v.

**Neil V. SULLIVAN et al., Defendants.**

**CITY OF PITTSFIELD, Plaintiff,**

v.

**Neil V. SULLIVAN et al., Defendants.**

**Civ. A. Nos. 70–1322–J and 70–1689–J.**

United States District Court,
D. Massachusetts.

July 19, 1974.

570

J. Francis Ogozalek, Jr., Chicopee, Mass., for Chicopee.

Daniel J. Gleason and Robert Glass, Nutter, McClennen & Fish, Boston, Mass., for Ayer.

L. Geo. Reder, City Sol., Pittsfield, Mass., for Pittsfield.

Lawrence Bench, Asst. Atty. Gen., Commonwealth of Mass., Boston, Mass., for defendants.

## STAY OF FURTHER PROCEEDINGS

JULIAN, Senior District Judge.

The plaintiffs, Ayer, Chicopee and Pittsfield, are municipal corporations in Massachusetts. They seek a declaration that M.G.L. c. 70, §§ 1–5,[1] or parts

---

1. M.G.L. c. 70, § 4, delineates the method by which state school aid is determined. Prior to January 1, 1974, M.G.L.A. c. 70, § 4, provided:

   "The school aid to be paid to each city and town in any calendar year shall be the amount obtained by multiplying its reimbursable expenditures for the last preceding fiscal year by its school aid percentage for the calendar year during which such fiscal year begins; provided, that in determining the amount of such aid the school aid percentage shall not be applied to any portion of reimbursable expenditures above an amount equal to one hundred and ten per cent of the average reimbursable expenditures per child in net average membership for the state multiplied by the total number of children in net average membership in such city or town; and further provided, that in the case of any city or town whose reimbursable expendi-

thereof, are unconstitutional, an injunction barring enforcement or effectuation of the allegedly unconstitutional provisions, and "such other, further and alternative relief as the nature of this action may require and the Court may deem proper." The challenged provisions govern state aid to public schools in Massachusetts. The plaintiffs claim that the state statute is invalid under the Supremacy Clause, U.S.Const. Art. 6, cl. 2, as it conflicts with a federal statute—20 U.S.C. § 240(d)(2).[2] Plaintiffs assert that the part of the state school aid formula which requires reduction of the "total amount expended . . . for the support of public schools" by the amount of P.L. 874 payments[3] violates § 240(d)(2) in that it takes into "consideration" P.L. 874 payments and in that it makes state aid "available to" plaintiffs "in such a manner as to result in less State aid" to plaintiffs than they would receive "if [they] were not so eligible" for P.L. 874 payments.[4] The suits have been tried.

tures per child in net average membership shall fall below eighty per cent of the state average of such expenditures, the school aid percentage shall be applied to a figure which is equivalent to eighty per cent of the state average reimbursable expenditures per child in net average membership, provided, however, that the amount received by any such city or town as reimbursement on account of the provisions of this section for expenditures for reimbursable purposes during the previous fiscal year shall not exceed seventy-five per cent of the sum of its reimbursable expenditures as defined in this chapter nor shall the amount of said aid be less than one hundred and fifteen per cent of the amounts paid by the commonwealth to each city or town in nineteen hundred and sixty-five as school aid under this chapter, plus any grants and reimbursements paid in such year under provisions of chapters sixty-nine, seventy-one and seventy-four which are thereafter terminated. In determining the amounts paid by the commonwealth in nineteen hundred and sixty-five, amounts paid to regional school districts shall be deemed to have been received by each city or town in such district in the same proportion as the expenditures of such district which it is required to pay bear to the total expenditures of such district."

The words "child" and "children" have been deleted and the words "pupil" and "pupils" have been inserted therefor. 1973 Acts of the General Court, c. 925, § 8A.

M.G.L.A. c. 70, § 2(c), defines "reimbursable expenditures":

"(c) 'Reimbursable Expenditures', the total amount expended by a city or town during a fiscal year for the ·support of public schools during said year exclusive of expenditures for transportation, for food for school food service programs, for special classes for the physically handicapped and the mentally retarded, for programs of vocational education as provided in chapter seventy-four and for capital outlays, after deducting therefrom, any receipts for tuition, receipts from the federal government, the proceeds of any invested funds, and grants, gifts and receipts from any other source, to the extent that such receipts are applicable to such expenditures; provided, however, that amounts received by a city or town under this chapter as school aid shall not be so deducted. The commissioner of education may, by regulation, further define the expenditures and receipts that may be included hereunder."

2. 20 U.S.C.A. § 240(d)(2) provides:

"(2) No payments may be made during any fiscal year to any local educational agency in any State which has taken into consideration payments under this subchapter in determining the eligibility of any local educational agency in that State for State aid (as defined by regulation), or the amount of that aid, with respect to free public education during that year or the preceding fiscal year, or which makes such aid available to local educational agencies in such a manner as to result in less State aid to any local educational agency which is eligible for payments under this subchapter than such local educational agency would receive if it were not so eligible."

(Hereinafter payments made under the subchapter referred to in § 240(d)(2) will be referred to as P.L. 874 funds or payments.) In light of the disposition of these cases, no opinion is now expressed concerning whether, if the state formula conflicts with § 240(d)(2), the sole remedy under § 240(d)(2) is the abrogation of federal payments.

3. See note 2, *supra*.

4. The parties have not addressed the possibility that a system which begins at "total expenditures," see note 1, *supra*, which necessarily include, and therefore would seem to "consider," P.L. 874 funds, is impermissible under § 240(d)(2).

Subsequent to the initiation of these suits, the plaintiffs filed petitions in Suffolk Superior Court of the Commonwealth of Massachusetts arising out of the same transactions and involving the same constitutional issue being litigated here. The parties first informed this Court of the pending state petitions during the final day of trial. Tr. 3–14 to 3–39. By oral order of this Court, certified copies of the state court pleadings have been filed with this Court. It appears from the certified copies that Chicopee and Ayer commenced their state action in December, 1972, and that Pittsfield commenced its state action in December, 1973. The state court pleadings incorporate the facts alleged in the federal complaints by reference thereto. The state court petitions state they are "intended to establish the liability of the Commonwealth to the petitioners for School Funds and State Aid in the event that General Laws c. 70, §§ 1–5, or certain provisions thereunder, are declared to be unconstitutional" by this Court. The petitions pray for reimbursement for all amounts withheld. The Eleventh Amendment is a jurisdictional bar to this Court's consideration of some issues in this controversy.[5] The plaintiffs have attempted to present to the state court those issues which under *Edelman* may not be considered by this Court, while attempting to prevent the state court from considering those issues which are, in plaintiffs' view, properly before this Court.[6] The question arises, however, whether this Court should refrain from deciding these cases. Under proper circumstances a federal court may decline to proceed with a case although the court has jurisdiction thereof.[7] Declination may occur on the court's own motion. See Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). For reasons of comity and judicial efficiency a federal court should, in proper circumstances, refuse to hear an action or stay an action when a suit is pending in state court between the same or similar parties[8] on identical transactions, and when the state court has jurisdiction to adjudicate all the issues in the case while the federal court can adjudicate

---

5. Despite plaintiffs' request for such "relief as the nature of this action may require," and although the complaints allege the amounts of aid allegedly withheld, the plaintiffs concede the Eleventh Amendment bars the award of damages or monetary relief as a form of "equitable restitution" to redress the alleged deprivation of state aid in past years. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

6. Counsel for the Town of Ayer has informed this Court of the reason plaintiffs do not desire the state court, which apparently can afford full relief, to consider all issues in this controversy:
   "The plaintiffs resorted to the Federal Court . . . because of the belief . . . that the Federal Courts are peculiarly competent and well situated to interpret Federal statutes, legislative history of Federal statutes, and determine whether or not they are in conflict under the supremacy clause."
   (Tr. 3–35.) If this be true, it is also true that the state courts would be peculiarly competent and well situated to construe the state statutes in question and to determine whether they are inconsistent with the Federal statute. The state courts' interpreta-

tion of the state statutes might well remove any conflict, whether real or apparent, that may exist between the state and Federal statutes.

7. *E. g.*, Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Federal Reserve Bank v. Commissioner of Corporations and Taxation, 499 F.2d 60 (1 Cir. 1974); Commerce Oil Ref. Corp. v. Miner, 303 F.2d 125 (1 Cir. 1962); In re Pres. & Fellows of Harvard College, 149 F. 2d 69 (1 Cir. 1945). C. Wright, Law of Federal Courts § 52 (2 ed. 1970) identifies four situations in which the courts have so declined and collects the cases. See also Annot., 5 A.L.R.Fed. 10 (1970). The federal court may decline to proceed even though it acquired jurisdiction before suit was brought in the state court. *E. g.*, Monks v. Barker, 35 F.Supp. 529 (D.Mass.1940).

8. The defendants herein are individuals who, as state officials, purportedly are responsible for administration of state aid to public schools. They are represented by an Assistant Attorney General of the Commonwealth of Massachusetts. The Commonwealth of Massachusetts is the defendant in the state court proceedings.

only the issue of the constitutionality of the state statute. Several factors indicate this Court should decline to proceed with these cases.

First, the manner in which this controversy has been divided between two courts is an attempt, perhaps impermissible, to circumvent the proscription placed upon this Court's jurisdiction by the Eleventh Amendment. Cf. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Amdur v. Lizars, 372 F.2d 103 (4 Cir. 1967) (attempted circumvention of state court requirement of security in certain shareholder derivative suits).

Second, the issue of the state's liability for damages, assuming funds were improperly withheld, is determinable in the pending state court actions. It is not determinable in these actions. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This Court's lack of power to determine an important issue in the controversy suggests that this Court should not proceed with decision of these suits. See Fields v. United States, 423 F.2d 380, 191 Ct. Cl. 191 (1970); Humble Oil & Refining Co. v. Copeland, 398 F.2d 364 (4 Cir. 1968); Hickok v. Gulf Oil Corp., 265 F. 2d 798 (6 Cir. 1959); Nigro v. Blumberg, 373 F.Supp. 1206, 1213 (E.D.Pa. 1974); Kurland, Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine, 24 F.R.D. 481, 491–492 (1959).

Third, judicial efficiency and economy suggest that the issues in this controversy properly should be adjudicated in a single forum. See P. Beiersdorf & Co., Inc. v. McGohey, 187 F.2d 14 (2 Cir. 1951); Annot., 5 A.L.R.Fed. 10, § 6[a] (1970) collecting cases.

Fourth, considerations of comity also suggest that this Court should refrain from deciding some issues in this controversy and defer to the state court in which all issues may be resolved and in which this controversy is pending. See, e.g., Amdur v. Lizars, 372 F.2d 103 (4 Cir. 1967); Mottolese v. Kaufman, 176 F.2d 301 (2 Cir. 1949); Nigro v. Blumberg, 373 F.Supp. 1206, 1212–1213 (E. D.Pa.1974); Annot., 5 A.L.R.Fed. 10, § 5[a] (1970); Note, Stay of Federal Proceedings in Deference to Concurrently Pending State Court Suits, 60 Colum. L.Rev. 684 (1960); Note, Power to Stay Federal Proceedings Pending Termination of Concurrent State Litigation, 59 Yale L.J. 978 (1950).

The foregoing factors persuade this Court that it should not proceed to an adjudication of these cases.

Furthermore, it is not clear on the present record that an effective injunction could issue.[9] The defendants are the State Board of Education [10] and various individuals in their capacities as Governor, Treasurer, Controller (or Comptroller), Commissioner of Education, and members of the State Board of Education.[11] While the complaints and answers delineate the roles played by the defendants in the distribution of school aid, and while the "Stipulation of Agreed Facts," ¶ 1, states that

"the defendant, Commissioner of Education and defendant members of the State Board of Education are the state officers who have the *primary* responsibility for calculating and certifying the amounts due to Cities and towns under the state school aid statute . . . " (emphasis added),

the record does not indicate whether the defendants have *complete* control over

---

9. Plaintiffs, as their state court actions evince, contend that a damage action is available. Therefore, this is not an instance in which the absence of a damage remedy indicates that injunctive relief would be appropriate.

10. The Court does not now decide whether the Eleventh Amendment bars these suits as against the Board of Education.

11. In one suit the same individual is sued in his capacity as Commissioner of Education and also in his capacity as Secretary of the Board of Education.

Counsel were directed to amend the complaints to reflect the identities of the individuals presently in office. Tr. 1–6. See F.R.Civ.P. 25(d)(1). This has not been done.

the certification and disbursement of the school aid or the monies which allegedly are being wrongfully withheld. Therefore, the effectiveness of any injunction which this Court might grant against the defendants is questionable.

Additionally, on the present record the actual distribution of federal funds to the plaintiffs in past years is unnecessarily muddled. The amounts of which the plaintiffs allege they were deprived are similarly muddled.

The amount of P.L. 874 funds the plaintiffs received from the federal government is precisely ascertainable. Nevertheless, disparate figures appear in the record without elucidation.[12] For the fiscal year ending June 30, 1972, Ayer's P.L. 874 funds, according to one exhibit, totaled $1,615,955 (Exh. 9B), or, according to another exhibit, $1,574,231 (Exh. A). In the fiscal year ending June 30, 1971, Chicopee's P.L. 874 funds totaled $741,613 (Exh. 8A) or $1,227,832 (Exh. A); in the following year that municipality's P.L. 874 funds totaled $1,635,712 (Exh. 8B) or $1,690,372 (Exh. A). In the fiscal year ending June 30, 1971, Pittsfield's P.L. 874 funds totaled $441,847 (Exh. 10A) or $542,892 (Exh. A); in the following year that municipality's P.L. 874 funds totaled $332,773 (Exh. 10B) or $335,327 (Exh. A). All efforts to explain these disparities have been frustrated.[13] The figures are irreconcilable.[14]

The amounts of state aid allegedly withheld from plaintiffs are also unclear.[15] First, as noted previously, disparate figures have been presented concerning the amounts of P.L. 874 aid. Since the amount of state aid allegedly withheld is a percentage of the P.L. 874 aid, precise determination of the amount of the P.L. 874 aid must precede calculation of the amount of withheld state aid. Second, Ayer and Pittsfield have, without explanation, claimed different amounts were withheld by the state in one year.[16] Third, the

12. The comparisons which follow were made by choosing years in which "Reimbursable Expenditures," see note 1, *supra*, on the computer printout of the numbered exhibit, e. g., Exh. 9B, corresponded with "Reimbursable Expenditures Reported" in Exh. A. No comparisons were made for those years for which computer printouts were not introduced into evidence or for which Exh. A did not denote "Reimbursable Expenditures Reported." All counsel appear to have accepted the accuracy of all figures which follow.

13. In the numbered exhibits, the P.L. 874 funds are entitled "Revenue from the Federal Government—Public Law 81–874 Federal Impacted Areas." Exhibit A lists "P.L. 874 Funds Expended in relevant fiscal year." The parties have not explained whether these different titles convey different meanings. The inference is that they do not. Ayer has used amounts entitled "Revenue from the Federal Government—Public Law 81–874 Federal Impacted Areas" in its compilation of amounts due if the state statute is unconstitutional. But see Tr. 3–53; 3–144; 3–177. Chicopee and Pittsfield, however, have used the amount of "P.L. 874 Funds Expended in relevant fiscal year" for the same purpose. Compare Appendices B, C, and D to "Plaintiffs' Joint Post-Trial Brief on Merits and Tables of Amounts Claimed as Additional State School Aid"

with Exhibits 8, 9, 10, and A. Therefore, efforts to reconcile the figures have proven futile.

14. A further disparity occurs when the amount of P.L. 874 funds listed on the computer printout of Exh. 8A is compared with the amount entitled "Revenue from the Federal Government—Public Law 81–874 Federal Impacted Areas" on the state form which constitutes the remainder of Exh. 8A.

15. The parties stipulated:
"14. If P.L. 874 receipts were not required to be deducted from the 'total amount expended' by each of the plaintiffs in a given fiscal year, each plaintiff would have substantially greater 'reimbursable expenditures' and consequently would qualify for a substantially greater 'state school aid entitlement.'"
However, defendants offered expert testimony, which was admitted without objection, in direct contradiction to this stipulation. Tr. 3–114; see also Tr. 3–126. The Court repeatedly informed the parties that the actual amounts of P.L. 874 funds and state aid and the methods of allocating state and federal aid had to be disclosed if a reasoned decision was to issue.

16. Compare Ayer's "Bill of Complaint," ¶ 14, with Appendix C to "Plaintiffs' Joint Post-Trial Brief on Merits and Tables of Amounts Claimed as Additional State School

plaintiffs assert that the formula by which the amount of withheld aid can be determined is exact, yet they do not consistently apply the proffered formula.[17] Fourth, on the present record it is impossible to determine with any accuracy the point at which the 110% limitation of the first proviso of M.G.L. c. 70, § 4,[18] becomes effective so as to limit the amount of state aid Pittsfield receives.[19] Therefore it is impossible to ascertain the amount of added state aid, if any, Pittsfield would receive if P.L. 874 funds were reimbursable.[20]

The parties have consistently maintained that the amounts of aid received from federal and state sources, as well as the amounts allegedly withheld, are unimportant to decision of these cases. The Court, however, repeatedly informed the parties that actual figures were needed to insure the Court's decision would be clearly reasoned, fully informed, and based upon fact rather than upon an abstract, and perhaps hypothetical, situation. The haphazard presentation of these cases has not elucidated the issues, it has obscured them. On the present inadequate record, injunctive relief is inappropriate.

■ Assuming, *arguendo*, that actual figures are not necessary, cf. Stipulation ¶ 14 quoted at note 15, *supra*, injunctive relief still is inappropriate. An injunction prohibiting effectuation of M.G.L. c. 70, §§ 1–5, would severely disrupt state finances and public school funding. This harm to the state would be disproportionate to the benefits accruing to the plaintiffs. In fact, since the injunction would terminate all state aid under c. 70, §§ 1–5, including that to the plaintiffs, it would be counterproductive, and harm, not benefit, would accrue to the plaintiffs.[21]

■ Declaratory relief is also inappropriate. The inadequate record before the Court, as well as the Court's disfavor of piecemeal litigation of this controversy, are a sufficient basis for denial of declaratory relief. See 10 Wright & Miller, Federal Practice and. Procedure: Civil § 2759 (1973) collecting cases. Furthermore, if the record were adequate and the Court entered a declara-

---

Aid"; compare Pittsfield's complaint ¶ 16 with Appendix D to "Plaintiffs' Joint Post-Trial Brief on Merits and Tables of Amounts Claimed as Additional State School Aid."

17. Appendix A to the "Plaintiffs' Joint Post-Trial Brief on Merits and Tables of Amounts Claimed as Additional State School Aid" delineates a formula by which the amount of state aid and the amount withheld can be determined. The Appendix purports to apply the formula to Chicopee figures for 1971. The lone example, however, on its face is incorrect. Applying the formula, the "ceiling" under the last proviso of c. 70, § 4, see note 1, *supra*, if P.L. 874 funds are reimbursable would be $3,511,075.50; the certified entitlement if P.L. 874 funds are reimbursable would be $3,491,476.97. The difference between the certified entitlement and that which would have been certified if P.L. 874 funds are reimbursable is $876,452.97. This is approximately $20,000 less than plaintiffs calculate.

18. See note 1, *supra*.

19. Exh. A provides information sufficient to determine the point at which the limitation becomes applicable to Ayer and Chicopee if one ignores the certainty that inclusion of P.L. 874 funds in Reimbursable Expenditures on a state-wide basis would raise the 110% limit by some undetermined, and, on the present record, undeterminable, figure.

20. If it is assumed that Pittsfield was subjected to the 110% limitation or was short of it by a few dollars, no increase or a minimal increase in state aid would occur. [This ignores the effect of inclusion of P.L. 874 funds in Reimbursable Expenditures on a state-wide basis.]

21. An injunction preventing implementation of only that part of the state school aid formula which requires reduction of the "total amount expended . . . for the support of public schools" by the amount of P.L. 874 funds, assuming that part is the sole basis for invalidity, involves the problem of severability of parts of a statute. Chapter 70, §§ 1–5, contains no provision concerning the severability of its provisions, nor has any state statute dealing with the problem in general been cited or located. No argument has been made that, under Massachusetts case law, the valid portions are severable from the invalid. If such an argument can be made, it is an issue of state law and the Massachusetts court in which this controversy is pending provides an excellent forum.

tory judgment, it would not settle any part of the controversy.

The plaintiffs have placed this controversy before the state judiciary. The state court petitions are "intended to establish the liability of the Commonwealth to the petitioners for School Funds and State Aid in the event that General Laws, c. 70, §§ 1–5, or certain provisions thereunder, are declared to be unconstitutional" by this Court. ¶ 7 of Chicopee and Ayer's petition; ¶ 5 of Pittsfield's petition. Therefore, if this Court declared c. 70, §§ 1–5, or any part thereof, invalid as conflicting with the federal statute, the state suits for damages would proceed. The Supreme Court of the United States has not, however, ruled that a declaration of the unconstitutionality of a state statute binds the state courts. See Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L. Ed.2d 505 (1974). Furthermore, the Supreme Judicial Court of Massachusetts, in a decision issued after *Steffel*, has ruled that a declaratory judgment of a federal district court that a state statute is unconstitutional, while entitled to respect, is not binding upon the Supreme Judicial Court. Fiorentino v. Probate Court, 310 N.E.2d 112, 114 (Mass.1974); see also Steffel v. Thompson, *supra*, 415 U.S. at 479–485, 94 S. Ct. 1209 (Mr. Justice Rehnquist, concurring). Therefore, if this Court entered a declaratory judgment on the constitutional issue, i.e., whether the state statute is invalid under the Supremacy Clause as in conflict with the federal statute, the issue would be subject to relitigation in the state's judicial system. The pending state court litigation, if it is to proceed, would relitigate the constitutional issue. Fiorentino v. Probate Court, *supra*. Any declaration by this Court would be, in effect, an advisory opinion. Therefore, these cases are inappropriate for declaratory relief. 28 U.S.C. § 2201; Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L. Ed. 1620 (1942); see 10 Wright & Miller, Federal Practice and Procedure: Civil § 2759 (1973) collecting cases.

This litigation should be pursued to a conclusion only in that forum which has the power to dispose of all the issues in the controversy. In these cases that forum is the state court and not this Court. It would be a waste of judicial manpower and a possible source of friction and confusion to divide into two parts what is essentially one controversy and to prosecute one part in the federal court and the other part in the state court.

In light of those circumstances which indicate this Court should not proceed with these cases and in light of the inappropriateness of injunctive or declaratory relief, the Court on its own initiative hereby orders that further proceedings in both cases be stayed pending determination of the state actions.[22]

This Court will, however, retain jurisdiction. Should the constitutional issue remain undecided after final judgment in the state actions, this Court will upon appropriate motion vacate the stay and resume consideration of the litigation.

---

22. The plaintiffs should be able to amend their state court petitions to place all issues and requests for relief before the state court. Mass.R.Civ.P. 1A, 15, 18(a).